The document below is hereby signed.

Signed: June 7, 2017



S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| In re | ) | |
| | ) | |
| LATRICIA LEE HARDY, | ) | Case No. 16-00280 |
| | ) | (Chapter 7) |
| Debtor. | ) | Not for publication in |
| | ) | West's Bankruptcy Reporter |

MEMORANDUM DECISION AND ORDER
<u>DENYING DEBTOR'S MOTION FOR A STAY PENDING APPEAL</u>

    This decision addresses a motion filed by the debtor,
LaTricia Hardy, for a stay pending appeal.  *See* Dkt. No. 208-1.
The motion will be denied.

I

THE EVENTS LEADING TO THE APPEAL

    The debtor, LaTricia Hardy, and her mother, Patricia White,
own commercial real estate located at 1414-1416 Pennsylvania
Avenue SE, Washington, DC 20003 (the "Property").  On May 31,
2016, the debtor commenced this case by filing a voluntary
petition under chapter 13 of the Bankruptcy Code (11 U.S.C.).  On
July 25, 2016, the court entered an order converting the case to
a case under chapter 7 of the Bankruptcy Code.  Bryan Ross was
appointed the chapter 7 trustee in the case.  When the debtor

filed her petition, the debtor's one-half ownership interest in

the Property became property of the estate that, during the

pendency of this case under chapter 7 of the Bankruptcy Code,

only the chapter 7 trustee is authorized to administer.  As noted

in *Hopkins v. Foothill Mountain, Inc. (In re Hopkins)*, 346 B.R.

294, 303 (Bankr. E.D.N.Y. 2006):

> Property of the estate falls under the exclusive
> jurisdiction of the bankruptcy court.  *See* 28 U.S.C.
> § 1334(e).[1]  Since property of the estate is now in
> *custodia legis*, it is administered exclusively by a
> specifically designated fiduciary, a trustee.  *See, e.g.*,
> 11 U.S.C. §§ 323(a), 363 and 704.  All rights held by a
> debtor in the property are extinguished, unless the
> property is exempted from the estate under 11 U.S.C. §
> 522 or abandoned back to the debtor under 11 U.S.C. §
> 554.[2]

In Adversary Proceeding No. 16-10034 the court entered a

final order on November 15, 2016, authorizing Ross to sell the

Property free and clear of Patricia White's 50% co-owner's

interest in the Property pursuant to 11 U.S.C. § 363(h).  Ross

---

[1]  28 U.S.C. § 1334(e)(1) provides:

The district court in which a case under title 11 is
commenced or is pending shall have exclusive jurisdiction
of all of the property, wherever located, of the debtor
as of the commencement of such case, and of property of
the estate[.]

The bankruptcy cases in which such exclusive jurisdiction lies
have been referred to the bankruptcy judges of this district
pursuant to District Court Local Bankruptcy Rule 5011-1.

[2]  The court cited as examples of this proposition *Miller v.
Pacific Shore Funding*, 287 B.R. 47, 50-51 (D. Md. 2002), and
*Rowland v. Novus Financial Corp.*, 949 F.Supp. 1447, 1453 (D. Haw.
1996).

has proceeded to attempt to sell the Property, and currently is moving towards closing on a sale pursuant to a contract of sale approved by the court.[3]

On September 9, 2016, on motion of the trustee, the court entered an order (Dkt. No. 79) directing the debtor to turn over the Property to the trustee. The order noted that the Property allegedly was unoccupied. In any event, as discussed below, the current occupants of the Property were not tenants of the Property at the time of entry of the turnover order. After the conversion of this case to chapter 7 on July 25, 2016, and the entry of the turnover order on September 9, 2016, the debtor not only failed to comply with the turnover order but also allowed other persons to occupy the Property. The debtor represents that she entered into landlord-tenant lease agreements with the current occupants in 2017, but she failed to produce any such leases despite requests from the trustee and orders from the court to do so.

As established at a hearing of May 23, 2017, those leases between the debtor and the current occupants of the Property, if they in fact exist, are the only leases currently in place with

---

[3] One sale approved by the court by an order entered on January 30, 2017, fell through, but Ross obtained a second proposed contract of sale. Pursuant to a hearing of April 19, 2017, the court approved that contract of sale, entering a written order to that effect on June 2, 2017. The sale has not yet closed, in part because the debtor has not turned over the Property to the trustee.

respect to the Property.[4]  After conversion of the debtor's

bankruptcy case to chapter 7, the debtor's interest in the

Property was property of the bankruptcy estate, to be

administered by the chapter 7 trustee.  Thus, after conversion of

the case, the debtor had no authority to enter into such leases

of the Property, and the leases (if they exist) are thus

nullities.  In any event, entering into any such leases amounted

to acts to exercise control over property of the estate in

violation of the automatic stay.  *See* 11 U.S.C. § 362(a)(3).

Accordingly, those leases (if they exist), entered into in

violation of the automatic stay, are void.  *See CPI Crude, Inc.*

*v. U.S. Dep't of Energy*, 77 B.R. 320, 322 (D.D.C. 1987).[5]

Moreover, when the debtor entered into any such lease agreements

after entry of the court's order directing turnover of the

---

[4]  The debtor has maintained that she had a lease from her
mother to use the premises to operate the Capitol Hill Beauty
Salon, but for reasons explained in the *Memorandum
Decision re Trustee's Contempt Motion Against Debtor and Debtor's
Motion to Dismiss Trustee's Claims* (Dkt. No. 201 entered on May
26, 2017) at 3-5, the court found that no such lease existed, and
concluded that even if such a lease existed, the debtor had no
authority to enter into the leases she entered into in 2017 with
the current occupants of the Property, and that the turnover
order remained fully enforceable.  The forthcoming sale of the
Property will necessarily be free and clear of whatever interests
the debtor has in the Property.

[5]  Although 11 U.S.C. § 362(d)(1) permits the court, for
cause, to enter an order annulling the automatic stay, thereby
retroactively undoing the void character of an act that was in
violation of the automatic stay, no such order has been entered
in this case.

4

Property, those leases were entered into in violation of the
turnover order and were therefore invalid.

On April 28, 2017, Ross filed a *Motion for Order to Show
Cause Why the Debtor Should Not Be Held in Contempt for Failure
to Comply with Order Approving Turnover of Real Property* (Dkt.
No. 167) (the "*Contempt Motion*") on April 28, 2017, seeking to
hold the debtor in civil contempt and seeking additional relief
related to the void leases and the debtor's interference with his
obtaining possession of the Property pursuant to the turnover
order.  The debtor opposed the trustee's *Contempt Motion* by
filing a *Motion to Dismiss Trustee's Claims* (Dkt. No. 193).  On
April 28, 2017, the bankruptcy court issued an *Order Directing
Debtor to Appear and Show Cause Why She Should Not Be Held in
Civil Contempt* (Dkt. No. 171) ("*Order to Show Cause*") directing
the debtor to respond to the *Contempt Motion* and to appear before
the bankruptcy court on May 23, 2017, and show cause why she
ought not be held in civil contempt.  The *Order to Show Cause*
contained*, inter alia*, the following provisions:

> ORDERED, that the Debtor shall provide to the
> counsel for the Trustee and produce in Court on the
> date of the hearing, the name, address and phone number
> of any person alleged to be a tenant, licensee or
> otherwise authorized to enter the property at 1414-1416
> Pennsylvania Ave., S.E., Washington, D.C.; and it is
> further
> ORDERED, that the Debtor shall provide to counsel
> for the Trustee and produce in Court on the date of the
> hearing each and every writing created since the
> Petition Date which is a lease, license or authorizes

5

the use of the property at 1414-1416 Pennsylvania, Ave. S.E., Washington, D.C.

The court held a hearing on the trustee's *Contempt Motion* and the debtor's *Motion to Dismiss the Trustee's Claims* on May 23, 2017. At that hearing, the debtor failed to comply with the court's above-quoted directives in its *Order to Show Cause*. Although the debtor testified that there *are* written leases between her and current occupants of the Property, which she testified she entered into in 2017, she produced no documents at the hearing showing that there are any written leases with respect to the Property.

The court issued an oral ruling at the hearing in favor of the trustee, and supplemented that ruling in a *Memorandum Decision re Trustee's Contempt Motion Against Debtor and Debtor's Motion to Dismiss Trustee's Claims* (Dkt. No. 201) entered on May 26, 2017. Also on May 26, 2017, pursuant to the court's oral ruling of May 23, 2017, and the supplemental *Memorandum Decision* of May 26, 2017, the court entered an order (Dkt. No. 202) denying the debtor's *Motion to Dismiss Trustee's Claims* and an *Order re Trustee's Motion Against Debtor for Contempt* (Dkt. No. 205) ("*Order re Trustee's Motion for Contempt*"). The *Order re Trustee's Motion for Contempt* contained in pertinent part the following provisions:

> . . . it is
> ORDERED, that the Debtor, LaTricia L. Hardy, be and the same is hereby found to be in contempt for her

6

violations of the automatic stay of 11 U.S.C. § 362(a)(3) and this Court's Order Granting Chapter 7 trustee's Motion for Turnover of Real Property of the Estate (Doc. 79) entered on September 9, 2016, requiring that she turn over the improved real property located at 1414-1416 Pennsylvania, Ave., S.E., Washington, D.C. (the "Property") to the Trustee by engaging in leasing activities in 2017 in an attempt to deny the Chapter 7 trustee possession of the Property; and it is further

ORDERED, that to the extent she has not already done so, the Debtor shall deliver to counsel to the Patrick J. Kearney, Esq., counsel to the Chapter 7 trustee, the full name, address and phone number of all persons whom she contends have a lease or other right to be on the Property within 1 day of the date of this Order by hand delivery or facsimile or email for which counsel confirms receipt; and it is further

. . .

ORDERED, that any grant of a lease or right to use or occupy the Property, by the Debtor since the date of conversion to Chapter 7 is declared VOID because she lacked the power to grant such lease or right of use of occupancy; and it is further

ORDERED, that any grant of a lease or right to use or occupy the Property by Patricia White or any agent on her behalf entered after November 15, 2016, is subject to the Chapter 7 trustee's right to sell the Property free and clear of such lease, use or occupancy; and it is further

ORDERED, that the Chapter 7 trustee shall promptly give notice, which, at a minimum, shall include the form notice filed herewith and signed by the Court, by first class mail to all alleged tenants or users of the Property identified by the Debtor, that they must vacate the Property within five (5) days after the date of the Notice or suffer eviction, and it is further

ORDERED, that consistent with the Order Granting Chapter 7 Trustee's Motion of Turnover of Real Property (Doc 79) entered on September 9, 2016, on the sixth day after the date of the Notice (that on such date the Chapter 7 trustee shall post at the Property and mail to any tenants or users of the Property identified by the Debtor) giving notice to all persons that are a tenant or user of the Property to vacate the Property, the United States Marshal shall, upon request of the Chapter 7 trustee (which request shall certify the date of such Notice and certify that it was posted and mailed as

7

required by this Order), evict the Debtor and/or any and
all other occupants from the Property[.]

## II

## THE NOTICE OF APPEAL

On May 26, 2017, the debtor filed a notice of appeal (Dkt.
No. 208) identifying the order being appealed as an order of May
23, 2017 (the date on which the court made its oral ruling), and
appending the court's *Memorandum Decision* of May 26, 2017.
Attached to the notice of appeal is the debtor's *Emergency Motion
to Stay Bankruptcy's Court Order Pending Appeal*, seeking a stay
of "the May 23, 2017 Bankruptcy Court order that's imposing a
five (5) day Motion to Quit (eviction) or suffers eviction and on
the latter of the sixth day the United States Marshall shall
evict the Debtor and/or any and all other occupants from the
Property, residential tenant and commercial tenants pending final
deposition of the Appeal with United States District Court."  *See*
Dkt. No. 208-1, at 1-2.  The court will assume, without deciding,
that the notice of appeal was effective as a notice of appeal
regarding the order (Dkt. No. 202) denying the debtor's *Motion to
Dismiss Trustee's Claims* and the *Order re Trustee's Motion for
Contempt* (Dkt. No. 205), which were the orders dealing with
eviction that were issued pursuant to the court's oral ruling of
May 23, 2017, as supplemented by the *Memorandum Decision* of May
26, 2017.

III

THE MOTION FOR A STAY PENDING APPEAL

In *Hardy v. Ross (In re Hardy)*, 561 B.R. 281, 283 (D.D.C. 2016), three consolidated appeals by the debtor, the District Court addressed the standards for a stay pending appeal: the debtor must show

> (1) that she has a strong likelihood of success on the merits; (2) that she will suffer irreparable injury if injunctive relief is denied; (3) that other interested parties will not suffer substantial harm if injunctive relief is granted; and (4) that the public interest favors the granting of injunctive relief, or at least, that the granting of injunctive relief is not adverse to the public interest.

A. <u>Likelihood of Success on the Merits</u>

The debtor has failed to make a strong showing that she is likely to prevail on the merits of her appeal.

1. <u>Alleged Lack of Subject Matter Jurisdiction</u>.

In her emergency motion for a stay pending appeal, the debtor argues, first, that this court lacked subject matter jurisdiction to rule on the trustee's *Contempt Motion* and the debtor's opposition thereto (in the form of a *Motion to Dismiss the Trustee's Claims*). The trustee's *Contempt Motion* was plainly a proceeding "arising in" the bankruptcy case over which the district court had subject matter jurisdiction pursuant to 28 U.S.C. § 1334(b). *See Stoe v. Flaherty*, 436 F.3d 209, 216 (3d Cir. 2006) ("The category of proceedings 'arising in' bankruptcy cases 'includes such things as administrative matters, orders to

9

turn over property of the estate and determinations of the
validity, extent, or priority of liens.'  1 *Collier on Bankruptcy*
§ 3.01[4][c][iv] at 3-31 (quotations and footnotes omitted).").
In turn, pursuant to District Court Local Bankruptcy Rule 5011-1,
the district court has referred all such proceedings to the
bankruptcy judges of this district.  The bankruptcy court
therefore had authority to decide the matter under 11 U.S.C.
§ 157(b)(1) (granting bankruptcy judges authority to "hear and
determine all cases under title 11 and all core proceedings
arising under title 11, or arising in a case under title 11"
upon the district court's referral of such cases and proceedings
to the bankruptcy court).

    2.   Alleged Bar of the Pending Appeal of the Turnover Order.

    The debtor argues, second, that the bankruptcy court had no
authority to issue its orders enforcing the turnover order while
the appeal of the turnover order is pending.  However, the
District Court denied a stay of the turnover order pending
appeal, and where there is no stay in place the Bankruptcy Court
plainly has authority to enforce the turnover order despite a
pending appeal of that order.  *See In re AOV Indus., Inc.*, 46
B.R. 190, 192 (D.D.C. 1984) (noting that despite a pending appeal
of an order it was "plain" that the bankruptcy court was entitled
to implement the confirmed plan for which the confirmation order
had not been stayed" (citing *In re Roberts, Inc.*, 652 F.2d 793,

10

798 (9th Cir. 1981))).  "Unless a bankruptcy court's ruling is
stayed pending appeal, that court retains jurisdiction to engage
in proceedings to enforce its own rulings." *Garrett v. Coventry
II DDR/Trademark Montgomery Farm, L.P. (In re White-Robinson)*,
777 F.3d 792, 796 (5th Cir. 2015) (citation omitted).[6]

   3.   Assertion that the *Order re Trustee's Motion for
        Contempt* Could Only be Issued by an Article III Judge.

The debtor argues, third, that the bankruptcy court, not
being a court under Article III of the Constitution, lacked
constitutional authority under *Stern v. Marshall*, 564 U.S. 462
(2011), to issue its *Order re Trustee's Motion for Contempt* and
its order denying the debtor's *Motion to Dismiss Trustee's
Claims*.  Those orders (which are the orders being appealed and
the subject of the debtor's current emergency motion for a stay)
were unquestionably issued in "core proceedings arising under
title 11, or arising in a case under title 11" within the meaning
of 28 U.S.C. § 157(b)(1).  *See Stoe*, 436 F.3d at 216-19
(describing what constitutes a core proceeding "arising under

---

   [6]   Quoting *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010),
which dealt with the standards for obtaining a stay pending the
filing and disposition of a petition for a writ of mandamus, the
debtor points to the pendency of the appeal of the turnover order
and argues that there is a "'fair prospect' to warrant a stay[,]"
and that "the court will note probable jurisdiction."  However,
the District Court has already denied a stay pending the appeal
of the turnover order, and the District Court's jurisdiction over
that appeal does not, without a stay order, displace the
bankruptcy court's authority to enforce the turnover order.

title 11" and a core proceeding "arising in a case under title 11"); *In re White-Robinson*, 777 F.3d at 795-96 (explaining that the bankruptcy court's actions to enforce a prior order it issued in a core proceeding are core proceedings).  In any event, the *Order re Trustee's Motion for Contempt* and the order denying the debtor's *Motion to Dismiss Trustee's Claims* plainly fall within the non-exclusive list of examples of core proceedings set forth in 28 U.S.C. § 157(b)(2).[7]  Accordingly, the bankruptcy court had statutory authority to issue those orders.

However, under *Stern v. Marshall* a bankruptcy judge, not serving pursuant to a lifetime appointment, lacks constitutional authority to decide such a core proceeding if the proceeding falls within the judicial power of the United States under Article III, § 1, of the Constitution.  564 U.S. at 469 & 503.  In *Stern v. Marshall*, Vickie Lynn Marshall was the debtor in a bankruptcy case.  The assets of the bankruptcy estate included her cause of action against E. Pierce Marshall, the son of her

---

[7]  Core proceedings listed in 28 U.S.C. § 157(b)(2) include, *inter alia*: "matters concerning the administration of the estate" (§ 157(b)(2)(A)); "orders to turn over property of the estate" (§ 157(b)(2)(E)); "orders approving the use or lease of property, including the use of cash collateral"(§ 157(b)(2)(M)); "orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate" (§ 157(b)(2)(N)); and "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims" (§ 157(b)(2)(O)).

deceased husband, for tortious interference with the gift she had
expected from Pierce's father, on the basis that Pierce had
wrongfully prevented his father from taking the legal steps
necessary to provide Vickie with half his property. *Id.* at 470.
Pierce filed an adversary proceeding complaint against Vickie
contending that Vickie had defamed him and seeking a
determination that the defamation claim was nondischargeable.
*Id.* He later filed a proof of claim, seeking to recover from the
bankruptcy estate the damages owed him based on his defamation
claim. *Id.* Vickie responded in the adversary proceeding by
asserting a counterclaim against Pierce based on her cause of
action for tortious interference with the gift she had expected
from Pierce's father. *Id.* The bankruptcy court granted Vickie
summary judgment on Pierce's defamation claim. Months later,
after a bench trial, the bankruptcy ruled in favor of Vickie on
her counterclaim and entered a monetary judgment in her favor.
*Id.* at 470-71.

Vickie's counterclaim was a core proceeding under 28 U.S.C.
§ 157(b)(2)(C) (listing "counterclaims by the estate against
persons filing claims against the estate" as core proceedings).
Nevertheless, the Court held that the bankruptcy judge's entry of
a monetary judgment in favor of Vickie was a prohibited exercise
of the judicial power of the United States. *Id.* at 469 & 503.
The Court concluded on the facts of the case that Vickie had

13

pursued a "state law action independent of the federal bankruptcy
law and not necessarily resolvable by a ruling on the creditor's
proof of claim in bankruptcy." *Id.* at 487.  The Court ruled that
the bankruptcy court "lacked the constitutional authority to
enter a final judgment on a state law counterclaim that is not
resolved in the process of ruling on a creditor's proof of
claim." *Id.* at 503.  The holding in *Stern v. Marshall* is a
narrow one limited to its facts.  Here, the trustee's pursuit of
the turnover order, as authorized by 11 U.S.C. § 542(a), and
later of an order to enforce compliance with that turnover order
was a far cry from pursuit, as in *Stern v. Marshall,* of a state
law action independent of federal bankruptcy law.

Importantly, the Court noted in *Stern v. Marshall* that in
deciding whether a bankruptcy court has constitutional authority
to exercise its statutory authority to decide a core proceeding
"the question is whether the action at issue stems from the
bankruptcy itself or would necessarily be resolved in the claims
allowance process." *Id.* at 499.  Here, the trustee's *Contempt
Motion* was unquestionably a proceeding that "stems from the
bankruptcy itself."  The bankruptcy court's turnover order, which
the trustee sought to enforce by way of the *Contempt Motion*,
stemmed from the bankruptcy case itself,[8] and therefore was one

---

[8]  *See* 11 U.S.C. § 542(a) (providing the basis for a
bankruptcy court ordering turnover).

14

that the bankruptcy court could issue under *Stern*.[9]   That
turnover order remains in place.   Similarly, the bankruptcy
court's constitutional authority necessarily included taking
steps to enforce its own turnover order and to enforce the
protections of the estate provided by the automatic stay.   *See
Souther v. Tate (In re Tate)*, 521 B.R. 427, 439, 442-43 (Bankr.
S.D. Ga. 2014) (noting that *Stern v. Marshall* did not abrogate
the bankruptcy court's inherent authority under *Chambers v.
NASCO, Inc.*, 501 U.S. 32, 43 (1991), to enforce its own orders,
as well as the broader authority to do so under 11 U.S.C.
§ 105(a)).   *See also Bavelis v. Doukas (In re Bavelis)*, 519 B.R.
707, 709 (Bankr. S.D. Ohio 2014) (citing case law supporting the
proposition that bankruptcy courts have constitutional authority
to enforce their prior orders and that such authority is not
affected by *Stern v. Marshall*).   It was within the bankruptcy
court's constitutional authority to declare the leases the debtor
claims to have entered into with the current occupants void, as
entered into in violation of the automatic stay (an issue that
stems only from the bankruptcy case); to declare the alleged
existing leases invalid in light of the court's prior turnover
order (an order that did not exist outside of the bankruptcy

---

[9]   *See Geron v. Peebler (In re Pali Holdings, Inc.)*, 488
B.R. 841, 850 (Bankr. S.D.N.Y. 2013) ("[T]he reported post-*Stern*
decisions have overwhelmingly held that bankruptcy judges can
constitutionally enter final judgments in turnover actions."
(footnote omitted)).

15

case); and to order that the trustee is authorized to have the
United States Marshal evict both the debtor (who has failed to
turn over the Property in violation of the turnover order) and
her tenants (who have no rights pursuant to the void or invalid
leases).  The bankruptcy court constitutionally issued those
orders to enforce its prior turnover order.

4.  Argument That Only the Superior Court of the District of
Columbia Could Evict the Tenants.

The debtor argues that any evictions must go through the
Landlord and Tenant Branch of the Superior Court of the District
of Columbia.  The argument is without merit.

First, the provisions of the bankruptcy court's order
regarding eviction did not address eviction pursuant to landlord-
tenant law.  Instead, they were based on the leases being void as
entered into in violation of both the automatic stay of 11 U.S.C.
§ 362(a)(3) and the bankruptcy court's prior turnover order.
Accordingly, although this court would ordinarily abstain in the
case of a typical landlord-tenant dispute, this is not that type
of case, and abstention would be inappropriate.

Second, the court had inherent authority as well as
statutory authority under 11 U.S.C. § 105(a) to enter an order to
enforce its own prior turnover order and to nullify acts in
violation of the automatic stay and the turnover order.

Third, under 11 U.S.C. § 704(a)(1), the chapter 7 trustee
must "collect and reduce to money the property of the estate for

16

which such trustee serves, and close such estate as expeditiously
as is compatible with the best interests of parties in
interest[.]"  Here, the debtor's misconduct has stalled the
trustee's efforts to sell the Property in order to obtain funds
with which to pay creditors, thereby hampering the trustee's
effort to comply with § 704(a).

In light of the foregoing, forcing the chapter 7 trustee to
proceed with seeking an order in the Superior Court to evict the
occupants of the Property, as sought in the *Contempt Motion*,
based on provisions of the Bankruptcy Code and violations of this
court's turnover order, would have made no sense.  It is this
bankruptcy court's own turnover order that is being enforced; it
is the automatic stay of 11 U.S.C. § 362(a)(3) that arose in the
debtor's bankruptcy case, the violation of which the bankruptcy
court was authorized to address; and it is the debtor's
frustration of the chapter 7 trustee's efforts, in compliance
with federal bankruptcy law governing the trustee's duties,
expeditiously to accomplish a sale of the Property, for which a
contract of sale has been approved by the bankruptcy court, that
prompted the chapter 7 trustee's *Contempt Motion* in the first
place.

5.  <u>Conclusory Argument that the Evictions Are Illegal</u>.

The debtor argues that the evictions pursuant to the
bankruptcy court's order are illegal, without providing any

17

explanation to render the argument anything other than conclusory. Moreover, it is the debtor's own illegal misconduct that necessitated the entry of an eviction order. As discussed already, the bankruptcy court has authority to enforce its prior turnover order and to declare void the debtor's purported leases with third parties currently occupying the Property. Thus, it was well within the bankruptcy court's authority to issue an order for eviction of any entities occupying the Property in violation of the prior turnover order and the automatic stay. *See*, *e.g.*, *Jensen-Carter v. Hedback (In re Stephens)*, Civ. Nos. 11-3459 (JRT/AJB), 11-2661 (JRT/AJB), 2012 WL 1899716, at \*4-5 (D. Minn. May 24, 2012) ("The Court concludes that the Bankruptcy Court had jurisdiction and authority to order an eviction because its order was necessary to give effect to its earlier orders.") This case has reached the stage where the court must resort to such an eviction order, given the debtor's violation of the automatic stay and frustration of the court's turnover order. *See Scarver v. Ellis (In re McKeever)*, 567 B.R. 652, 665 (Bankr. N.D. Ga. 2017) (acknowledging that bankruptcy courts have authority to order eviction from property of the estate and characterizing such action as "a last resort to enforce compliance with previously entered orders").

The debtor has not shown the existence of any law in the District of Columbia that would prevent the bankruptcy court from

18

exercising its authority over the Property to enforce its turnover order and the automatic stay. The debtor admitted at the May 23, 2017, hearing that the entities currently occupying the Property (pursuant to alleged written leases which the debtor has failed to produce despite being ordered to do so) entered into such occupancy in 2017. Thus, if such leases exist, the debtor entered into them after the automatic stay of 11 U.S.C. § 362(a)(3) arose, barring any exercise of control over property of the estate; after the debtor's case was converted to chapter 7 and the chapter 7 trustee became vested with the sole authority to enter into leases of property of the estate; and after entry of the court's turnover order. Thus, those entities occupying the Property (whoever they may be) have no right of occupancy pursuant to any supposed leases that the debtor says she granted those entities in 2017.

In any event, the debtor has no standing to assert the rights of those entities, and the bankruptcy court plainly can evict the debtor herself to enforce its turnover order.

## B. Lack of Harm to the Debtor

The debtor points to irreparable harm to the supposed tenants of the Property - entities who she claims have rights pursuant to written leases that she failed to produce, in violation of the court's *Order to Show Cause*. She has no standing to raise claims of irreparable harm to those entities.

19

Further, it would be inappropriate to allow the debtor to raise the issue of harm to the supposed tenants when she caused any harm they may have suffered by entering into leases with them when she both lacked authority to do so and was barred from doing so by 11 U.S.C. § 362(a)(3). The debtor has failed to claim any harm to herself that would arise from a stay being denied.

### C. Harm to the Trustee

If a stay pending appeal were granted, the harm to the trustee, as representative of the estate being administered for the benefit of creditors, is that his efforts to comply with his statutory duty to expeditiously liquidate property of the estate under 11 U.S.C. § 704(a)(1) will be impeded, and his ability to close on the contract of sale may be frustrated if the purchaser and back-up purchaser elect to back out based on the length of time it takes to deliver the Property free of any occupants.

### D. The Public Interest

The public interest favors allowing the trustee to carry out his statutory duty to expeditiously liquidate the property of the estate. Thus, a stay pending appeal would be contrary to the public interest.

IV

CONCLUSION

For all of these reasons, the debtor has failed to show that a stay pending appeal is appropriate. It is thus

20

ORDERED that the debtor's *Emergency Motion to Stay Bankruptcy's Court Order Pending Appeal* (Dkt. No. 208-1), appended to her notice of appeal (Dkt. No. 208), is DENIED.

[Signed and dated above.]

Copies to: Debtor; recipients of e-notification of orders.