The document below is hereby signed.

Signed: June 17, 2017



_S. Martin Teel, Jr._
_United States Bankruptcy Judge_

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| LATRICIA LEE HARDY, | ) | Case No. 16-00280 |
| | ) | (Chapter 7) |
| Debtor. | ) | Not for publication in |
| | ) | West's Bankruptcy Reporter. |

MEMORANDUM DECISION AND ORDER
DENYING DEBTOR'S MOTION TO STAY SALE ORDER

This addresses the *Emergency Motion to Stay Bankruptcy's Court Order Pending Appeal* (Dkt. No. 213) filed by the debtor, LaTricia Lee Hardy, and seeking a stay pending appeal of this court's *Order Ratifying And Approving Sale Free And Clear (1414-1416 Pennsylvania Avenue, S.E. Washington, DC)* (the "*Sale Order*") (Dkt. No. 224 signed on June 1, 2017, and entered by the clerk on June 2, 2017). The *Emergency Motion to Stay* will be denied for the following reasons.

I

NO NOTICE OF APPEAL HAS BEEN FILED

The debtor has not filed a notice of appeal from the *Sale Order* and paid the fee for filing such a notice of appeal.

Accordingly, there is no pending appeal within which to grant a stay pending appeal.

II

THE FILING FEE FOR AN APPEAL HAS NOT BEEN PAID AND NO
MOTION FOR LEAVE TO APPEAL *IN FORMA PAUPERIS* HAS BEEN FILED

Even if the debtor filed a notice of appeal, she would not be entitled to pursue the appeal unless she paid the filing fee for pursuing an appeal or obtained an order permitting her to prosecute the appeal *in forma pauperis*. No fee has been paid for pursuing an appeal, and no motion has been filed to pursue an appeal *in forma pauperis*. It is appropriate to consider procedural infirmities related to the appeal in deciding whether to grant a stay pending appeal. *In re Smith*, 397 B.R. 134, 137 (Bankr. D. Nev. 2008). I thus address next whether the debtor would be entitled to proceed *in forma pauperis*.

III

GRANTING A MOTION TO APPEAL IN *FORMA
PAUPERIS* WOULD NOT BE WARRANTED BASED ON THE
ISSUES ON APPEAL IDENTIFIED IN THE *EMERGENCY MOTION TO STAY*

Under 28 U.S.C. § 1915(a), "[a]n appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith." An appellant is not entitled to proceed *in forma pauperis* unless the appellant states issues the appellant intends to pursue on appeal that have at least an arguable basis in law and fact, failing which the appeal is not taken in good faith. *See Neitzke v. Williams,* 490 U.S. 319, 325

(1989); *Sills v. Bureau of Prisons*, 761 F.2d 792, 794 (D.C. Cir. 1985). The issues on appeal stated in the *Emergency Motion to Stay* are not issues having an arguable basis in law and fact, as demonstrated by the discussion later of the lack of a probability of success on appeal.[1] Accordingly, an appeal based on those issues is not pursued in good faith.[2]

As in the case of an appeal of a district court order, if a bankruptcy court, as the trial court, denies such a motion, certifying that the appeal is not taken in good faith or is taken based on some improper motive, *see Wooten v. D.C. Metro. Police*

---

[1] The District Court has referred all proceedings in bankruptcy cases to the Bankruptcy Court to address in the first instance. DCt.LBR 5011-1(a). That would include any proceeding seeking leave to appeal *in forma pauperis*. In any event, under 28 U.S.C. § 158(c)(2) an appeal to a district court is taken in the same manner as an appeal in a civil action to a court of appeals from the district court. Accordingly, as under the analog of Fed. R. App. P. 24, the appropriate first step to obtain leave to appeal *in forma pauperis* generally is to file a motion for such relief in the trial court (the Bankruptcy Court, in this case) pending the appeal to the appellate court (the District Court). *See Hobby v. Beneficial Mortg. Co. of Virginia*, No. CIV.A. 2:05CV110, 2005 WL 5409003, at *2 (E.D. Va. June 3, 2005); *Valente v. Donahue*, 2004 WL 1454355 (N.D. Ill. June 28, 2004) (Bankruptcy Court should review in forma pauperis filings to determine if appeals are filed in good faith). *See also In re Yelverton*, No. 09-00414, 2015 WL 6599699, at *1 (Bankr. D.D.C. Oct. 29, 2015).

[2] The debtor's failure to comply with orders of this court and to cooperate with the trustee as required by 11 U.S.C. § 521(a)(4) strongly suggest that such a motion would be denied additionally on the basis that the appeal is pursued for the improper purpose of delay, and thus is taken in bad faith for that additional reason.

*Dept.*, 129 F.3d 206, 207 (D.C. Cir. 1997); Fed. R. App. P. 24(a)(3), the party pursuing the appeal to the district court may nevertheless file in the district court, as the appellate court, a motion for leave to appeal *in forma pauperis* despite the trial court's denial of such leave. *See Wooten*, 129 F.3d at 207; Fed. R. App. P. 24(a)(5). A district court may take into account a certification by the bankruptcy court that the appeal has not been taken in good faith, *see Akers v. Dovenmuehle Mortgage (In re Akers)*, No. BR 07-662, 2013 WL 394189, at *1 (D.D.C. Jan. 30, 2013), but if the district court disagrees with the bankruptcy court and finds that the appeal was taken in good faith, the appellant would be entitled to proceed *in forma pauperis*. *See Wooten*, 129 F.3d at 208. If leave to appeal *in forma pauperis* is not obtained and the appellant fails to pay the filing fee, the appeal should be dismissed.[3] Accordingly, because leave to

---

[3] When an appellant from the district court fails to obtain leave to proceed without prepaying the filing fee, the court of appeals proceeds to dismiss the appeal unless the filing fee is promptly paid. *See Wooten v. District of Columbia Metropolitan Police Dept.*, 129 F.3d 206, 208 (D.C. Cir. 1997). By reason of 28 U.S.C. § 158(c)(2) directing that appeals from the bankruptcy court are to be taken in like fashion as appeals from the district court to the court of appeals, failure to pay the filing fee—when an appellant from a bankruptcy court order is not granted leave to appeal without prepayment of the filing fee—should similarly lead to dismissal. *See also* 28 U.S.C. § 1915(e)(2)(B)(i) (requiring dismissal if the appeal is frivolous or malicious). *See In re Akers*, No. CIV.A. 12-1853 JEB, 2013 WL 297914, at *1 (D.D.C. Jan. 25, 2013) (dismissing appeal, pursuant to an order to show cause, based on failure to pay the filing fee), *aff'd*, No. 13-7026, 2014 WL 2178716 (D.C. Cir. Apr. 25, 2014).

appeal *in forma pauperis* ought not be granted, it is likely that the appeal will be dismissed if the filing fee is not paid.

I will proceed to address the motion for a stay pending appeal, even though no appeal is pending, upon the assumption that the debtor might file a notice of appeal, and that, if the debtor does not pay the filing fee, stay relief might need to be addressed before the District Court decides whether dismissal is warranted based on non-payment of the filing fee.

III

THE PROCEDURAL HISTORY LEADING TO THE *SALE ORDER*

The debtor, LaTricia Hardy, and her mother, Patricia White, own commercial real estate located at 1414-1416 Pennsylvania Avenue, SE, Washington, DC 20003 (the "Property"). On May 31, 2016, the debtor commenced this case by filing a voluntary petition under chapter 13 of the Bankruptcy Code (11 U.S.C.). Under 11 U.S.C. § 541(a)(1), the debtor's interest in the Property became property of the bankruptcy estate. On July 25, 2016, the court entered an order converting the case to a case under chapter 7 of the Bankruptcy Code. The debtor did not

pursue an appeal of that order.[4]  Bryan Ross was appointed the chapter 7 trustee in the case.

On August 17, 2016, Ross filed a motion (Dkt. No. 63) for an order compelling the debtor to turn over the Property.  The debtor failed to oppose that motion, and the Bankruptcy Court entered an order (Dkt. No. 79) on September 9, 2016, compelling the debtor to turn over the Property.[5]

On November 15, 2016, in Adversary Proceeding No. 16-10034, the Bankruptcy Court entered a final order pursuant to 11 U.S.C. § 363(h) authorizing Ross to sell the Property free and clear of Patricia White's 50% co-owner's interest in the Property incident to a sale of the debtor's interest in the Property.  No appeal was pursued with respect to that order.

---

[4] On August 30, 2016 (36 days after the conversion order was entered), the debtor filed a *Motion Requesting Termination of Conversion to Chapter 7 Liquidation* (Dkt. No. 71).  On September 15, 2016, the Bankruptcy Court entered an order (Dkt. No. 82) denying that motion.  On September 22, 2017, the debtor filed a timely notice of appeal (Dkt. No. 94) of that order.  That appeal, initially docketed in the District Court as Civil Action No. 16-1970, has been consolidated with another appeal, Civil Action No. 16-1968, and is pending under that Civil Action No. 16-1968.

[5] On September 22, 2016, the debtor filed a timely notice of appeal (Dkt. No. 93) of the turnover order.  That appeal is pending as District Court Civil Action No. 16-1968.  The District Court has denied the debtor's motion for a stay of that order pending appeal. *Hardy v. Ross (In re Hardy)*, 561 B.R. 281 (D.D.C. 2016).

Ross has proceeded to attempt to sell the entire Property. One sale approved by the court by an order entered on January 30, 2017, fell through, but Ross obtained a second proposed contract of sale. Ross filed a motion to approve that contract of sale, and gave the debtor and creditors notice pursuant to Fed. R. Bankr. P. 2002(a) of a 21-day opportunity to oppose the motion, warning that "[i]f no objections are filed, the Court may consider the motion to be unopposed, and proceed to grant the relief requested without further notice to you." (Dkt. No. 157). No opposition was filed.

However, even though the sale motion was unopposed, the court had concerns about the proposed order the trustee had submitted, specifically, its proposed disposition of the proceeds of the sale. Accordingly, the court proceeded to hold a hearing on the sale motion on April 19, 2017, to address those concerns. The debtor appeared at the hearing of April 19, 2017, and did not request to be allowed to object to the motion out of time. The court orally approved that contract of sale, but instructed the trustee to submit a revised proposed sale order. The trustee eventually submitted a proposed order that was signed and entered as the *Sale Order* at issue.

After the hearing of April 19, 2017, the court held a hearing on May 23, 2017, on a motion the trustee filed on April 28, 2017, to facilitate closing the eventual sale by assuring

that he could convey the Property free of occupants.  In early 2017, the debtor had interfered with the trustee's efforts to sell the Property by allowing other persons to occupy the Property, and they still occupied the Property after the hearing of April 19, 2017.  Accordingly, on April 28, 2017, Ross filed his *Motion for Order to Show Cause Why the Debtor Should Not Be Held in Contempt for Failure to Comply with Order Approving Turnover of Real Property* (Dkt. No. 167) (the "*Contempt Motion*") seeking to hold the debtor in civil contempt and seeking additional relief related to the occupants who Ross had not authorized to occupy the Property.  The debtor opposed the trustee's *Contempt Motion* by filing on May 22, 2017, a *Motion to Dismiss Trustee's Claims* (Dkt. No. 193), a motion in which she challenged the propriety of the sale approved by the court in its oral ruling rendered more than a month ago at the hearing of April 19, 2017.

On May 23, 2017, the court held a hearing on the *Contempt Motion* and the *Motion to Dismiss Trustee's Claims*.  The court issued an oral ruling at the hearing in favor of the trustee, and supplemented that ruling in a *Memorandum Decision re Trustee's Contempt Motion Against Debtor and Debtor's Motion to Dismiss Trustee's Claims* (Dkt. No. 201) entered on May 26, 2017.  To the extent that the *Motion to Dismiss Trustee's Claims* was requesting the court to revise its oral ruling of April 19, 2017 (the ruling

that the trustee's motion to sell the Property would be granted), the court's oral ruling of May 23, 2017, and the *Memorandum Decision* of May 26, 2017, rejected the debtor's arguments in favor of such relief.  The Bankruptcy Court accordingly denied the *Motion to Dismiss Trustee's Claims* by a separate order (Dkt. No. 202) of May 23, 2017.  The *Sale Order* was entered on June 2, 2017.  The debtor filed her *Emergency Motion to Stay* on June 8, 2017.

With that as background, I explain now why no stay pending appeal should be granted even if the debtor files a notice of appeal and pays the appeal fee or is allowed to proceed *in forma pauperis*.

IV

THE *EMERGENCY MOTION TO STAY* MUST BE DENIED

In *Hardy v. Ross (In re Hardy)*, 561 B.R. 281, 283 (D.D.C. 2016), involving three consolidated appeals by the debtor in this case, the District Court addressed the standards for a stay pending appeal, and they need not be repeated here.

A. <u>Lack of Probability of Success on Appeal</u>

One factor relevant to a motion for a stay pending appeal is whether the appellant has shown a probability of success on appeal.  There is no probability that the debtor will succeed on appeal.

1.  <u>The Argument That There Was a Lease of the Property to the Debtor From Her Mother That Was Rejected by Operation of 11 U.S.C. § 365(d)(4)</u>.  In the *Motion to Dismiss Trustee's Claims*, the debtor raised one of the arguments that she raises now in her *Emergency Motion to Stay*.  There is no probability that the debtor will succeed on appeal in showing that the court's rejection of that argument was in error.  The debtor's *Motion to Dismiss Trustee's Claims* asserted that "Debtor has acquired a lease to carry on business affairs on behalf of Capitol Hill Beauty Salon in 2010 with a 25 year lease," (Dkt. No. 193, at ¶ 10), that the lease was rejected by operation of 11 U.S.C. § 365(d)(4),[6] that the lease ceased to be property of the estate, and that the trustee was required to deliver the Property to the lessor (the debtor's mother) under that provision.  *See* Dkt. No. 193, at 3-4.

The debtor's arguments were arguments that the debtor should have raised via filing a timely opposition to the sale motion. By failing timely to oppose the sale motion, the debtor was barred from raising those arguments out of time, and she failed to show excusable neglect under Fed. R. Bankr. P. 9006(b)(1). warranting permitting her to raise the arguments out of time.

---

[6] The debtor also cited 11 U.S.C. § 365(d)(1), but that deals with residential leases.

Even if the debtor was entitled to oppose the sale motion out of time, the Bankruptcy Court found on the merits that there was no such lease:

> The debtor failed to schedule the lease and failed to comply with the trustee's request at the creditors' meeting pursuant to 11 U.S.C. § 341 that she produce any leases related to the Property. The court rejects the debtor's testimony that there was a lease between the debtor and her mother as not credible. No such lease existed, and at most an arrangement existed between the debtor and her mother whereby the debtor would continue to operate at the premises the beauty salon that her mother had operated. As a co-owner of the Property, the debtor already had the right to occupy the Property. Being allowed to continue to use the trade name of Capitol Hill Beauty Salon and its goodwill did not amount to a lease.

*Memorandum Decision* at 3. That finding cannot be reversed on appeal unless it is clearly erroneous. The evidence and circumstances supporting the court's finding included the following:

- The debtor does not contest that she failed to schedule the lease, failed to comply with the trustee's request (made at the meeting of creditors on ) that she produce any leases related to the Property, and failed to present at the hearing of May 23, 2017, a copy of any such lease with her mother. All of that made her testimony not credible.

- Moreover, the existence of such a lease to the debtor makes no sense, as the debtor already had a co-ownership interest in the Property, and thus a right to

11

>       occupy and enjoy the entire premises.  20 Am. Jur. 2d
>
>       *Cotenancy and Joint Ownership* § 41 (2015).  No lease
>
>       was needed.  This additionally makes the debtor's
>
>       testimony incredible.[7]

Accordingly, there is no probability of the debtor's succeeding on appeal in showing that the Bankruptcy Court committed clear error in finding that no lease existed.  There may have been an executory contract relating to using the trade name of Capitol Hill Beauty Salon and its goodwill, but an executory contract is not a lease, and is not subject to the deemed rejected provisions of 11 U.S.C. § 365(d)(4).

In any event, such a lease from the mother (if it existed), and if the debtor were entitled to contest the sale motion out of time, would not be a bar to the trustee's selling the Property, and selling it free and clear of the mother's rights as the lessor.  The trustee was authorized by the order entered on November 15, 2016, in Adversary Proceeding No. 16-10034, to sell the debtor's mother's one-half interest in the Property

---

[7] As co-tenants, each holding a 50% co-ownership interest in the Property, the debtor and her mother were each entitled to occupy the Property, and to share the income produced by the Property with the other co-tenant. *See United States v. Craft*, 535 U.S. 274, 279-80 (2002), citing 7 R. Powell & P. Rohan, Real Property §§ 50.03-50.06 (M. Wolf ed. 2001).  The mother could have leased or sold her co-tenant interest to someone else. *Id*. It just is not plausible that she would have entered into such a lease to the debtor when the debtor already had a right to occupy the Property.

12

(including any rights she has as a lessor of the Property) incident to any sale of the debtor's one-half interest in the Property.  Accordingly, the trustee could sell the entire Property (both the mother's one-half interest and the debtor's one-half interest), upon approval by the court under 11 U.S.C. § 363(b)(1) of the sale as being in the best interest of the estate.

As to the debtor's alleged interest as a lessee of her mother's one-half interest, the *Sale Order* was appropriate for two reasons even if (1) such a lease from the mother existed, and (2) the debtor was entitled to oppose the sale motion out of time on the basis of this alleged lessee interest.  First, 11 U.S.C. § 363(f)(4) authorizes a trustee to sell property under § 363(b) "free and clear of any interest in such property of an entity other than the estate, . . . if . . . (4) such interest is in bona fide dispute[.]"  For reasons discussed above, Hardy's assertion that she has such a lessee interest is in bona fide dispute based on the incredible nature of her testimony regarding the existence of such a leasehold interest.  Accordingly, § 365(d)(4) authorized the trustee to sell the Property free of the asserted leasehold interest.

Second, the debtor is equitably estopped from contending that there was such a lease. As explained in the *Memorandum Decision* at 3-4:

13

>Equitable estoppel is the "general proposition that, where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Davis v. Wakelee*, 156 U.S. 680, 689, 15 S.Ct. 555, 39 L.Ed. 578 (1895). The debtor scheduled no lease for the trustee to consider assuming or rejecting (or as to which the trustee could consider obtaining an order permitting him to delay deciding whether to assume or reject the lease). The debtor's conduct led the trustee to believe that there was no lease as to which he faced a deadline for assumption or rejection under 11 U.S.C. § 365(d)(4). Now, the trustee will be injured if the debtor is allowed to take the contrary position that there was a lease, with the lease rejected by operation of § 365(d)(4), and if such rejection of the lease would lead to the debtor's prevailing on the *Contempt Motion*. Equitable estoppel applies.

Accordingly, the debtor has no likelihood of succeeding on appeal based on her allegation that she had a lease from her mother.

  2. <u>The Argument Based on Leases to Occupants Entered Into by the Debtor in 2017</u>. At the hearing of May 23, 2017, the debtor testified that she entered into leases with the current occupants of the Property in early 2017, and that these were the only leases still in place. However, she had been ordered to

produce at the hearing any such leases, and she failed to do so.[8] Even if the leases existed, the leases were void for the following reasons. After conversion of the debtor's bankruptcy case to chapter 7, the debtor's interest in the Property, as property of the bankruptcy estate, was property to be administered by the chapter 7 trustee. Thus, after conversion of the case, the debtor had no authority under 11 U.S.C. § 363(b)(1) or (c)(1) to enter into such leases of the Property, as those provisions authorize the trustee, not a debtor, to lease property. The leases (if they exist) are thus nullities. Entering into any such leases amounted to acts to exercise

---

[8] On April 28, 2017, the Bankruptcy Court issued an *Order Directing Debtor to Appear and Show Cause Why She Should Not Be Held in Civil Contempt* (Dkt. No. 171) ("*Order to Show Cause*") directing the debtor to respond to the *Contempt Motion* and to appear before the Bankruptcy Court on May 23, 2017, and show cause why she ought not be held in civil contempt. The *Order to Show Cause* contained, *inter alia*, the following provisions:

> [I]t is
> . . .
> ORDERED, that the Debtor shall provide to the counsel for the Trustee and produce in Court on the date of the hearing, the name, address and phone number of any person alleged to be a tenant, licensee or otherwise authorized to enter the property at 1414-1416 Pennsylvania Ave., S.E., Washington, D.C.; and it is further
> ORDERED, that the Debtor shall provide to counsel for the Trustee and produce in Court on the date of the hearing each and every writing created since the Petition Date which is a lease, license or authorizes the use of the property at 1414-1416 Pennsylvania, Ave. S.E., Washington, D.C.

15

control over property of the estate in violation of the automatic stay. *See* 11 U.S.C. § 362(a)(3). Accordingly, they are void. *See CPI Crude, Inc. v. U.S. Dep't of Energy*, 77 B.R. 320, 322 (D.D.C. 1987).[9] Moreover, entry by the debtor into any such lease agreements in 2017, after entry of the court's September 2016 order directing the debtor to turn over the Property, violated the turnover order, and such leases are therefore invalid.

    3.  <u>The Meritless Arguments Based on 11 U.S.C. §§ 365(n) and 365(h)</u>. The debtor's *Emergency Motion to Stay* points to 11 U.S.C. § 365(n), which she argues "provides protections for intellectual property rights that are analogous to those protections provided to lessees of real property under section 365(h)." Neither § 365(n) nor § 365(h) applies here.

Section 365(n) was cited by the debtor for the first time in her *Emergency Motion to Stay*, and thus is a ground that the debtor, as an appellant, ordinarily would not be entitled to raise on appeal. In any event, § 365(n) deals with certain rights and obligations of a trustee regarding "an executory contract under which the debtor is a licensor of a right to intellectual property" (11 U.S.C. § 365(n)(1)) and the rights of

---

    [9] Although 11 U.S.C. § 362(d)(1) permits the court, for cause, to enter an order annulling the automatic stay, thereby retroactively undoing the void character of an act that was in violation of the automatic stay, no such order has been entered in this case.

16

the licensee upon a rejection of the executory contract (and prior to any rejection occurring).  It plainly has no applicability to the Property, which is real property, or any lease of the Property.

Section 365(h) applies when "the trustee rejects an unexpired lease of real property **under which the debtor is the lessor**." 11 U.S.C. § 365(h)(1) (emphasis added).  That provision has no applicability here:

- The debtor's mother, not the debtor, was the lessor under the alleged lease from the debtor's mother to the debtor.  Even if such a lease existed, § 365(h) does not apply to that lease.
- As to the leases to occupants that the debtor allegedly entered into in 2017, those leases are void for reasons already discussed.[10]

Accordingly, there are no leases to which § 365(h) would apply.

---

[10] The debtor argues, citing *In re Taylor*, 198 B.R. 142, 164-67 (Bankr. D.S.C. 1996); *In re Churchill Properties III L.P.*, 197 B.R. 283 (Bankr. N.D. Ill. 1996), that by reason of § 365(h), 11 U.S.C. § 363(f) may not be utilized to sell real property free and clear of a lease.  There is a contrary view that § 363(f) *may* be used to sell property free and clear of leases (provided that the requirements of § 363(f) are met).  *See Dishi & Sons v. Bay Condos LLC*, 510 B.R. 696, 700-708 (S.D.N.Y. 2014).  Because the alleged leases entered into in 2017 are void, it is unnecessary to decide which view is the better view.

B. <u>Lack of Harm to the Debtor if the *Sale Order* is Not Stayed</u>

The debtor does not contend that the sales price under the sales contract approved by the *Sales Order* was an unreasonable price.  Instead, she contends that the permitting the sale to go forward will moot the appeal.  However, "[i]t is well settled that an appeal being rendered moot does not itself constitute irreparable harm."  *In re 203 N. LaSalle St. Pshp.*, 190 B.R. 595, 598 (N.D. Ill. 1995) (citation omitted).  *See also Acton v. Fullmer (In re Fullmer)*, 323 B.R. 287, 304 (Bankr. D. Nev. 2005)

The debtor also fears that the sale will moot her appeal pending in the District of Columbia Court of Appeals regarding a dispute with her mortgagee.  The validity of the mortgage is also being addressed in the Bankruptcy Court, and the Bankruptcy Court has made clear that any distribution to the mortgagee will require a binding adjudication that the mortgage is valid.  There is no risk of the mortgagee receiving payment of its mortgage without there being such a binding adjudication, and even if there were the debtor has not shown injury for which a monetary judgment would not be an adequate remedy at law.  The debtor has not shown any irreparable damage arising fro12-1137m a stay pending appeal.

C. <u>Harm to the Trustee</u>

If a stay pending appeal were granted, the harm to the trustee, as representative of the estate being administered for

the benefit of creditors, is that his efforts to comply with his statutory duty to expeditiously liquidate property of the estate under 11 U.S.C. § 704(a)(1) will be impeded, and his ability to close on the contract of sale may be frustrated if the purchaser and back-up purchaser elect to back out based on the length of time it takes to deliver the Property free of any occupants.

### D. The Public Interest

The public interest favors allowing the trustee to carry out his statutory duty to expeditiously liquidate the property of the estate. Thus, a stay pending appeal would be contrary to the public interest.

### IV

### CONCLUSION

For all of these reasons, the debtor has failed to show that a stay pending appeal is appropriate. It is thus

ORDERED that the debtor's *Emergency Motion to Stay Bankruptcy's Court Order Pending Appeal* (Dkt. No. 208-1), appended to her notice of appeal (Dkt. No. 208), is DENIED.

[Signed and dated above.]

Copies to: Debtor; recipients of e-notification of orders.