The document below is hereby signed.

Signed: March 12, 2018



_S. Martin Teel, Jr._
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| LATRICIA LEE HARDY, | ) | Case No. 16-00280 |
| | ) | (Chapter 7) |
| Debtor. | ) | |

MEMORANDUM DECISION AND ORDER OVERRULING DEBTOR'S
OBJECTION TO PROOF OF CLAIM FILED BY DANIEL M. CAPLAN

The debtor, Latricia Lee Hardy, has filed an objection to the proof of claim filed by Daniel M. Caplan (Dkt. No. 323). Hardy lists numerous objections to Caplan's proof of claim, which fail for the reasons stated below.

I

The proof of claim is in the amount of $412,662.01 pursuant to a *Balloon Note* ("*Note*"), secured by a *Deed of Trust* on property located at 90 Q Street, SE, Washington, D.C. 20024. The *Note* is also secured by a deed of trust on property located at 3107 Good Hope Road, Unit N-305, Temple Hills, M.D., 20748, but that deed of trust is not at issue. The proof of claim meets all the requirements of Rule 3001, and accordingly "constitute[s] prima facie evidence of the validity and amount of the claim."

Fed. R. Bankr. P. 3001(f). Hardy has the burden of rebutting the presumption created by Rule 3001(f).

II

A. Party In Interest

Hardy contends that Caplan is not the true party in interest because he is listed as "nominee" on the *Deed of Trust*. Hardy cites Fed. R. Civ. P. 17(a) for support of her position that only a real party in interest may prosecute an action, and, as a nominee, Caplan is not the real party in interest because he was acting as nominee for an unnamed creditor. Hardy should have looked at Fed. R. Bankr. P. 3001(b) which states that the proof of claim shall be executed by the creditor. A creditor is defined under 11 U.S.C. § 101(10)(A) as an "entity that has a claim against the debtor that arose at the time or before the order for relief concerning the debtor."

Caplan is a creditor. Caplan is listed as the lender on both the *Note* and the *Deed of Trust* and he holds a 72.1% interest in the *Note*. That alone is sufficient to give Caplan authority to execute the proof of claim. Nevertheless, Caplan also provided the court, in his response to Hardy's objection to claim, the Nominee Agreement, wherein the participants appoint Caplan as the "Trustee to hold legal title of the Note and Security therefore, for and on their behalf." Nominee Agreement, ¶ 2. As the trustee, Caplan "has a claim against the debtor."

Hardy contends that the *Deed of Trust* lists the lender as an unnamed Maryland corporation, and there is no corporation by the name of Daniel M. Caplan in Maryland. This does not defeat the proof of claim. Hardy brought a civil action against Caplan in the Superior Court of the District of Columbia challenging the *Deed of Trust*, and the Superior Court granted summary judgment in Caplan's favor. On appeal, the District of Columbia Court of Appeals affirmed the Superior Court's ruling that the *Deed of Trust* was a valid enforceable instrument. *Hardy v. Caplan*, No. 16-CV-642, slip op. at 8 (D.C. Sep. 5, 2017). While the Court of Appeals did not hold specifically that the *Deed of Trust* was a valid instrument in spite of a misreference to Caplan as a Maryland corporation, the opinion made clear that the Court of Appeals did not find the misreference fatal to the validity of the *Deed of Trust*, and listed several cases supporting the validity of a deed of trust in spite of an incorrect reference to the lender. *Id.* at 9 n.10.

Hardy's objection that Caplan is not a real party in interest is overruled.

B. Statute of Limitations

In general, the statute of limitations for a contract is three years. D.C. Code § 12-301(7). However, an instrument under seal has a statute of limitations of 12 years. D.C. Code § 12-301(6). Under the Bankruptcy Code, a claim is allowed

except to the extent that the claim "is unenforceable against the debtor and property of the debtor under any agreement or applicable law."  11 U.S.C. § 502(b)(1).  Accordingly, any claim that is time-barred by a statute of limitations is unenforceable under applicable law, and must be disallowed.  The parties must show an intent to seal a document before courts will declare a document sealed.  *Murray v. Wells Fargo Home Morgt.*, 953 A.2d 308, 317 (D.C. 2008).  "When the instrument is made by an individual, the word "seal" next to the signature is 'standing alone, sufficient to create a sealed instrument entitle to the twelve-year statute of limitations."  *Id.* at 318 (quoting *Burgess v. Square 3324 Hampshire Gardens Apartments, Inc.*, 691 A.2d 1153, 1156-57 (D.C. 1997)).

Hardy contends that the proof of claim is barred by the statute of limitations.  According to the proof of claim, the last payment was made sometime in June 2009, more than three years prior to the filing of this bankruptcy case.  Caplan responds that the *Deed of Trust* was under seal, therefore, the statute of limitations is 12 years.  Additionally, the *Note* matured on October 1, 2013, less than three years prior to Hardy filing for bankruptcy, and the filing of the bankruptcy tolls the statute of limitations.

The *Note* and *Deed of Trust* are sealed instruments with a 12-

year statute of limitation.[1]  Hardy contends that the documents were not sealed because Caplan did not have a business with a seal.  An official seal by a corporation is not necessary to seal a document.  A document may be sealed by "any substance affixed to the document or the use of an impression such as that customarily used by notaries and corporations, or the use of any other mark, work, symbol, scrawl, or sign intended to operate as a seal."  *Murray*, 953 A.2d at 317 (quoting 1 Williston on Contracts § 2:4 (2007)).  On both the *Note* and the *Deed of Trust*, next to Hardy's signature, is, in parentheses, the word "seal."  This is sufficient under D.C. law to create a sealed instrument.  Therefore, the statute of limitations on enforcing monetary obligations owed under the *Note* and the *Deed of Trust* is 12 years, which has not expired, and thus the proof of claim is not barred by the statute of limitations.

Even if the statute of limitations on the *Note* were three years instead of 12, the statute of limitations on a note does not run until after the note matures, unless the creditor has opted to accelerate the note.  The general rule for the statute of limitations on a note was articulated in *Acceleration*

---

[1] Actions in foreclosure or the redemption of property in the District of Columbia are subject to the same 15-year statute of limitations as recovery of land. *Davis v. Stone*, 236 F. Supp. 553, 557 (D.D.C. 1964).  Therefore, even if the *Deed of Trust* were not a sealed document, subject to a 12-year statute of limitations, the *Deed of Trust* would still be enforceable under a 15-year statute of limitations.

*Provision in Note or Mortgage as Affecting the Running of the Statute of Limitations*, 161 A.L.R. 1211

> The general rule in American cases, . . . that when the acceleration provision is optional with the holder of a note or mortgage, the statute of limitations does not run until the note or mortgage is due according to its terms, in the absences of an exercise of the option to declare it due upon default, or in other words, that the default does not ipso facto start the running of the statute, has been recognized in a number of cases decided since the publication of the earlier annotation.

Among the many decisions cited for that proposition is *Feucht v. Keller*, 104 F.2d 250, 253 (D.C. Cir. 1939) (quoting *Keene Five Cent Savings Bank v. Reid*, 123 F. 221, 224 (8th Cir. 1903)), where the court held:

> Even when the contract states in absolute terms that the instrument becomes due upon default, it has sometimes been held that the period of limitations does not begin to run upon default "without some affirmative action" by the creditor, "such as a notification to the debtor, by a suit or otherwise, that on account of the default he elects to treat the entire indebtedness as due."

Hardy's objection concedes that there was no acceleration or attempt to collect the debt. Thus, the statute of limitations did not run until the *Note* matured on October 1, 2013. Furthermore, the automatic stay, which was placed on the *Note* when Hardy filed her petition on May 31, 2016, tolled the statute of limitations. D.C. Code § 12-304.

   This objection is overruled.

   C.   Laches

   Related to Hardy's claim that the statute of limitations has

run is a contention that the proof of claim is barred by laches. To succeed on a defense of laches, a party must show "an undue and unexplained delay on the part of one party which works an injustice on the other party." *Amidon v. Amidon*, 280 A.2d 82, 84 (D.C. 1971). Courts will not generally apply the bar of laches on a delay of less duration than the statute of limitations without some extraordinary circumstances. *Washington Loan & Trust Co. v. Darling*, 1903 WL 18588, at *5 (D.C. Jan. 20, 1903).

    Hardy represents that at all times Caplan knew his remedies, but failed to act; however, Hardy has not shown an undue or unexplained delay on Caplan's part. In fact, Hardy's own actions have prevented Caplan from pursuing his remedies. Hardy brought her Superior Court action against Caplan challenging Caplan's *Deed of Trust* on December 5, 2013, and her appeal of the Superior Court's ruling against her did not conclude until September 5, 2017. Hardy also filed for bankruptcy on May 31, 2016, initiating the automatic stay preventing Caplan from taking any foreclosure action absent a lifting of the automatic stay. The *Note* matured on October 1, 2013, less than three years prior to Hardy filing for bankruptcy. Caplan further represents that he did not pursue his claims earlier because of D.C. rules and regulations related to foreclosures that were pending since 2010 and whose lack of certainty as to what sufficed as compliance therewith resulted in title insurers declining to insure titles

to properties purchased in nonjudicial foreclosure sales.

Additionally, Hardy has not proven a harm due to Caplan's inaction on the *Note* and *Deed of Trust*.  Hardy claims she was harmed because a delay in Caplan's enforcement of his rights prevented Hardy from "performing an approved refinance mortgage loan from a reliable company at normal interest rate."  However, Hardy does not show that she would have been eligible for a refinance mortgage loan in 2010, on interest rates better than what she has with Caplan.  Additionally, there is no indication that Caplan's inaction at all prevented Hardy from seeking a refinance mortgage loan in 2010.  Just because Caplan was not enforcing the *Note* and *Deed of Trust* in 2010 does not mean that Hardy was not accruing interest and debt that Caplan would not enforce at some point.  If Hardy believed she could have gotten a better mortgage than the one she had, she was free to seek one at any time.

In sum, there are no extraordinary circumstances here to bar Caplan's proof of claim under the doctrine of laches.  This objection is overruled.

D.  Account Number

Hardy contends that the proof of claim fails to identify Hardy's account number; however, there is no rule or statute mandating a creditor to provide an account number with the creditor's proof of claim.  Hardy refers to Fed. R. Bankr. P.

9037 as support that a creditor is required to provide the account number.  However, rule 9037 deals with the redaction of personal information, and says nothing about mandating inclusion of an account number on a proof of claim.

Hardy contends that without the account number, the proof of claim does not prove that it is connected to the right account or if any account ever existed.  This argument is without merit.  The *Note* and *Deed of Trust* sufficiently show that Hardy entered into a financial arrangement with Caplan without the need of an account number to prove that point.  This objection is overruled.

    E.  Excessive Fees

Hardy contends that the proof of claim has excessive interest and late fees and violates the D.C. Usury Act (§ 28-3301 *et seq.*).  In general, parties may not contract for an interest rate exceeding 24% per annum.  D.C. Code § 28-3301(a).  Additionally, parties may not institute a penalty greater than "5% of the total amount of the delinquent or late periodic installment of principal and interest."  D.C. Code § 28-3310(b)(3).  However, exceptions to these general prohibitions are set forth in D.C. Code § 28-3301(d)(1), which provides (emphasis added):

> (d) Notwithstanding any other provision of this chapter:
>
> > (1) any loan, except a loan which is secured directly or indirectly by a mortgage or deed of trust on residential real property, or by a security interest in stock or a membership

>certificate issued to a tenant stockholder or resident member by a cooperative housing organization, or by the assignment by the way of a security of the borrower's interest in the proprietary lease or right of tenancy in property covered by a cooperative housing organization and the residential real property or cooperative is the place of residence of the borrower, where the borrower receives the use of an amount in excess of $2,500 **shall not be subject to the provisions of this chapter and it shall be lawful to contract for, or receive, any rate of interest thereon** if any of the following conditions are satisfied:
>
>\*\*\*
>
>(B) the borrower is an individual, group of individuals, corporation, unincorporated association, partnership, or other entity, and the loan is made for the purpose of acquiring or carrying on a business, professional, or commercial activity; or
>
>(C) the borrower is an individual, a group of individuals, corporation, unincorporated association, partnership, or any other entity, and the loan is made for the purpose of acquiring any real or personal property as an investment or for carrying on an investment activity[.]

Hardy contends that Caplan is violating D.C. law by charging a late fee of 10%, double the allowed 5% under D.C. Code § 28-3310(b)(3), and charging an interest rate in excess of 24%, in violation of D.C. Code § 28-3301(a), when including the interest rate of 16% under the *Note* and a late fee of 10%, equaling a total interest fee of 26%. Caplan contends that he meets an exception under the law because the loan is a commercial loan made to an individual for the "carrying on a business, professional, or commercial activity." D.C. Code § 28-

3301(d)(1)(B).  In support, Caplan notes that Hardy does not live at the residence, but rents it out.  Hardy counters Caplan by contending that her involvement with the property does not amount to a business.  Instead, Hardy alleges that the property is an investment.

Caplan is correct that his loan to Hardy, evidenced by the *Note* and *Deed of Trust*, meets an exception under § 28-3301(d)(1) making it "not . . . subject to the provisions of this chapter," a chapter which contains both D.C. Code § 28-3301(a) and D.C. Code § 28-3310(b)(3).  Under § 28-3301(d)(1) a loan is "not subject to the provisions of this chapter" if, in pertinent part, either:

> (B) the borrower is an individual . . . and the loan is made for the purpose of acquiring or carrying on a business, professional, or commercial activity professional, or commercial activity;

or
> (C) the borrower is an individual . . . and the loan is made for the purpose of acquiring any real or personal property as an investment or for carrying on an investment activity[.]

As a loan "made for the purpose of acquiring any real or personal property as an investment or for carrying on an investment activity" within the meaning of § 28-3301(d)(1)(C), the loan is not subject to either the 24% maximum interest rate provision in D.C. Code § 28-3301(a) or the 5% maximum penalty for late payments in D.C. Code § 28-3310(b)(3).  It matters not whether the loan is, as well, a "loan . . . made for the purpose of

11

acquiring or carrying on a business, professional, or commercial activity" within the meaning of § 28-3301(d)(1)(B), and I need not decide whether acquiring a property to rent it out would be a loan of that type.

The exception here under § 28-3301(d)(1) to the 24% maximum interest rate generally imposed by § 28-3301(a) applies not only because that limitation falls within the same chapter as § 28-3301(d)(1). It also applies because § 28-3301(d)(1) additionally provides that, when an exception therein applies to a loan, "it shall be lawful to contract for, or receive, any rate of interest thereon . . . ."

The exception here § 28-3301(d)(1) to a maximum late fee of 5% under § 28-3310 applies only because that limitation makes the loan not "subject to the provisions of this chapter," a chapter which includes § 28-3310. The plain meaning of § 28-3301(d)(1) indicates that the provisions of the whole chapter are inapplicable when a loan falls within an exception under § 28-3301(d)(1). There is no reason to not follow the plain meaning doctrine of statutory interpretation in this case as to whether the loan is excepted by § 28-3301(d)(1) from § 28-3310 as a loan for investment purposes. *See Dobyns v. United States*, 30 A.3d 155, 159 (D.C. 2011). In *Dobyns*, the court described the circumstances when it would be appropriate to look beyond the

12

plain meaning of the statute, none of which are relevant here.[2] Furthermore, § 28-3310 is titled as "Consumer protections" indicating that this section is designed to only protect consumer loans.[3] Hardy's loan from Caplan is not a consumer loan but one made for investment purposes; therefore, § 28-3310(b) does not apply to Hardy's loan, regardless of whether it falls under an exception under § 28-3301(d)(1).  This objection is overruled.

---

[2] However, it may be that the legislature was in error and did not intend in § 28-3301(d)(1) to make the **whole chapter** inapplicable to loans falling within an exception under § 28-3301(d).  This is made most plain when considering the succeeding section, D.C. Code § 28-3302(a), which provides for an interest rate of 6% where no rate is specified under the contract.  It is unlikely that the legislature would want to make the interest rate provision of § 28-3302(a) inapplicable to any loan not "subject to the provisions of this chapter" under § 28-3301(d)(1), including any commercial loan or a loan for investment purposes.  Whether that would be an absurd result of overbreadth that a court could disregard is not an issue presented here.  No absurd result will follow here by treating the provisions of § 28-3310 as inapplicable to Caplan's loan by reason of the loan's being excepted from that part of the chapter by § 28-3301(d)(1).

[3] Titles and headings of statutes are useful in determining the scope of a statute. *See Lewis v. Washington Hosp. Center*, 77 A.3d 378, 381 n. 3 (D.C. 2013)(court noted that titles may be used to resolve ambiguities).  The court recognizes that case law cautions that "the significance of the title of the statute should not be exaggerated," *Mitchell v. United States*, 64 A.3d 154, 156 (D.C. 2013), and "headings and titles are not meant to take the place of the detailed provisions of the text," *Bhd. of R.R. Trainmen v. Baltimore & O.R. Co.*, 331 U.S. 519, 528 (1947).  However, the heading of § 28-3310(b) contains a more detailed description of the protected class than the provisions of the section, indicating that the heading is dispositive as to the scope of § 28-3310.

F.  No Requirement of Documentation of Ledger Payments

Hardy contends that the proof of claim does not have ledger payments from September 2008 through July 2009.  Hardy again references Rule 9037, which does not support her objection.  Rule 9037 is construed broadly, as Hardy alleges, to protect Hardy's personal identification to include statement and account numbers, but that does not create a requirement that such documents must be filed to support a proof of claim.  This objection is overruled.

### III

For the aforesaid reasons, it is

ORDERED that Hardy's objections to Daniel M. Caplan's proof of claim are OVERRULED and the claim of Daniel M. Caplan remains an allowed secured claim.

[Signed and dated above.]

Copies to: Debtor (by hand mailing); all entities on BNC mailing list; e-recipients of orders.